UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

_____

DONALD G. GREER,

      Plaintiff,

v.                                    **MEMORANDUM OF LAW & ORDER**
                                    Civil File No. 12-1170 (MJD/JJG)

THE METROPOLITAN COUNCIL,
AND
AMALGAMATED TRANSIT UNION, LOCAL 1005,

      Defendants.

_____

Jay A. Tentinger, Tentinger Law Firm, P.A., Counsel for Plaintiff.

Charles V. Firth and Thomas E. Marshall, Engelmeier & Umanah, PA, Counsel for Defendant The Metropolitan Council.

M. William O'Brien and Timothy J. Louris, Miller O'Brien Jensen, PA, Counsel for Defendant Amalgamated Transit Union, Local 1005.

_____

## I.    INTRODUCTION

This matter is before the Court on Defendant Amalgamated Transit Union, Local 1005's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). [Docket No. 30] The Court heard oral argument on November 16, 2012. Because

Plaintiff has adequately pled Count VII, but not Count IX, the Court grants the Defendant's motion to dismiss in part and denies the motion to dismiss in part.

## II. BACKGROUND

### A. Factual Background

#### 1. The Parties

Plaintiff Donald G. Greer began working for Metro Transit, a subdivision of Defendant Metropolitan Council, on February 11, 2002 as a bus operator at the South Garage in Minneapolis, Minnesota. Plaintiff is a veteran of the Vietnam War, and is a disabled individual who suffers from partial deafness and post-traumatic stress disorder arising from his military service. Plaintiff has a disability rating of 60%, which consists of 10% for hearing and 50% for post-traumatic stress disorder. Plaintiff currently receives full health care benefits from the Veteran's Administration because he is a disabled veteran. Plaintiff was discharged from employment at Metro Transit on May 25, 2012. While employed at Metro Transit, Plaintiff was a non-member, fair share fee payer of Defendant Amalgamated Transit Union Local 1005.

Defendant Metropolitan Council is a public corporation that owns and operates Metro Transit. Metro Transit provides bus service throughout the Twin

Cities metropolitan area.

Defendant Amalgamated Transit Union Local 1005 ("ATU") is a labor organization that is responsible for negotiating for a collective bargaining agreement ("CBA") on behalf of a bargaining unit of Metro Transit employees.

## 2.   The Collective Bargaining Agreement

The CBA governing Plaintiff's employment at Metropolitan Council during the relevant time period went into effect on August 2, 2010 and it expired on July 31, 2012. The CBA was fully executed by Metro Transit and ATU on May 20, 2011. As negotiated by Metro Transit and ATU, the CBA provides, inter alia, that the employer will pay all employee health care premiums, and in exchange, employees would not receive a cost-of-living wage increase during the term of the CBA.

The CBA also sets forth a procedure for processing grievances.[1] Article 5, Section 4 of the CBA states as follows:

> **1st Step**. If the ATU wishes to initiate a grievance, it shall be reduced to writing, setting forth the nature of the grievance, the section(s) of the Agreement allegedly violated, and the relief requested, and filed with the appropriate Metro Transit representative. All grievances shall be filed within seven (7) days

---

[1]   Article 5, Section 4 outlines two grievance procedures. The parties appear to agree that the second grievance procedure, which became effective on June 1, 2011, is the applicable procedure for the current dispute.

after the ATU or its members have knowledge of the facts giving rise to said grievance.

Within seven (7) days after receiving the written grievance, the Metro Transit representative and union representative shall arrange a meeting and attempt to resolve the grievance. First step grievances will be held at the employee's current work location. The Metro Transit representative hearing the grievance shall provide a written response within five (5) days of the meeting. If no mutually satisfactory adjustment can be reached, then the union may appeal the grievance in writing to the General Manager of Metro Transit or his appointee indicating their intent to proceed with the grievance process, within seven (7) days after the written response is given.

**2nd Step.** Within ten (10) days following the receipt of the written grievance appealing the first step response, the ATU will contact the General Manager of Metro Transit or his appointee to arrange a meeting in an attempt to resolve the grievance. Within ten (10) days of the second step meeting, or within such additional time as may be mutually agreed upon a written answer concerning the grievance will be provided.

If no resolution is reached, the dispute may be submitted to arbitration in accordance with Article 13 hereof, at the written request of either party to the Agreement. The ATU shall first notify Metro Transit in writing of its intention to recommend to its membership, at the next regular meeting or at any special meeting it may wish to call for that purpose, that arbitration be requested, and provided further that it shall advise Metro Transit in writing of the decision by the membership within five (5) business days after the conclusion of such meeting.

Either party may request, within seven (7) days of the second step response to pursue mediation, if mutually agreeable.

Failure to comply with procedures and time limits above outlined

shall be deemed an abandonment or settlement of the grievance and shall terminate the matter. Saturdays, Sundays and Holidays shall be excluded in calculating the time limits herein specified.

### 3. Plaintiff's January 19, 2012 Grievance

On November 21, 2011, Metro Transit disciplined Plaintiff for a driving accident that occurred on October 31, 2011. Plaintiff maintained that the accident should have been classified as an "incident" as compared to an "accident" in his work record. In order to correct his work record, Plaintiff filed a "home-made" grievance against Metro Transit on November 29, 2011. Plaintiff did not notify ATU of the grievance until after he filed it. Plaintiff's November 29th grievance does not specifically mention the October 31 accident, and seeks "[c]ompensatory and punitive damages for loss and suffering caused by the discriminatory acts and conduct of the following employees: Frank Stumpf, Mark Kitzerow, Danielle Julkowski, Jim Perron, Vicki Shlmek." Plaintiff alleges that Defendants Metropolitan Council and ATU failed to execute the grievance process for this grievance.

Defendants permitted Plaintiff to re-file the grievance through ATU, and Plaintiff did so on January 19, 2012. Pursuant to the CBA's grievance procedure, Plaintiff, Metro Transit and Metropolitan Council held a first-step grievance

meeting on January 19, 2012.  As required by the CBA, Metro Transit submitted a written grievance response on January 26, 2011 memorializing the first-step meeting.  Metro Transit's written grievance response concluded that the accident would remain designated as an "accident."  Pursuant to the CBA's grievance procedure, ATU next notified Metro Transit of its intent to hold a second step grievance meeting.  Mark Lawson, of ATU, then contacted Plaintiff to inquire about his intent to proceed with the grievance and his availability to attend the second step grievance meeting on February 23, 2012.  On February 21, 2012, Plaintiff responded to the telephone call via an e-mail to Mark Lawson.  Plaintiff stated:

> I am presently out of town so I could not make a meeting on Thursday 2-23-12.  I have not received any documentation that I requested from the company, thru Lisa Benson.  With out [sic] the documentation I can not [sic] make a meaningful statement as is my right under the law.  Frank Stumpf's answer to the step one grievance hearing showed that my request for compliance with company policy and my rights under the law were completely ignored.  The fact that Frank Stumpf has intentionally disregarded the American with Disabilities Act shows that the grievance process is a sham.  This is a direct denial of due process as defined under Loudermill and Goldberg cases.
>
> Once I find out what my work schedule will be on Tuesday thru Thursday I will let you know.  I do not want to loose [sic] the overtime pay when I can't even get the documentation that I am entitled to by law, in order to defend myself.

The second-step grievance meeting never occurred. Defendant ATU claims that Plaintiff never followed-up to schedule the second step grievance meeting despite his promise to do so. Plaintiff claims that neither Defendant followed-up on his grievance request until April 24, 2012, when Defendant Metropolitan Council disclosed records of the October 31st accident that Plaintiff requested at the first step meeting on January 19th. The October 31st accident remained designated as an accident in Plaintiff's employee file.

### 4. Plaintiff's Termination and May 25, 2012 Termination Grievance

On May 25, 2012, Metro Transit terminated Plaintiff's employment based on his driving conduct and overall employment record. Defendant ATU filed a grievance that same day on Plaintiff's behalf for his termination. The parties participated in a first step grievance meeting on June 4, 2012. Defendant Metropolitan Council denied the grievance on June 8, 2012. The second step grievance meeting was held in two parts on July 9, 2012 and July 25, 2012. Defendant Metropolitan Council denied the grievance on August 8, 2012.

On August 28, 2012, Defendant ATU's executive committee met with Plaintiff to discuss his May 25, 2012 termination grievance. At this meeting,

Plaintiff presented his case to the executive committee, the executive committee deliberated over the termination circumstances, asked Plaintiff questions about his termination grievance, and reviewed the reasons for his termination in order to make a recommendation to the membership about arbitrating Plaintiff's grievance. ATU's counsel was present at the deliberations, and based on those conversations, Defendant ATU recommended to its membership to vote against pursuing arbitration. On August 28 and 29, 2012, ATU's membership voted against pursuing arbitration to resolve Plaintiff's matter.

    B.    **Procedural Background**

On May 15, 2012, Plaintiff filed a Complaint against Defendants Metropolitan Council and Amalgamated Transit Union Local 1005. [Docket No. 1] Plaintiff alleged that Defendant Metropolitan Council violated the Americans With Disabilities Act, the Rehabilitation Act of 1973, and the Minnesota Human Rights Act. Plaintiff also alleged that Defendants Metropolitan Council and ATU violated the Uniformed Services Employment and Reemployment Rights Act. Plaintiff amended his Complaint on June 7, 2012 to add a breach of contract claim against Defendant Metropolitan Council, to add a breach of duty of fair representation claims against Defendant ATU, and to remove his allegation

against ATU for violations of the Uniformed Services Employment and Reemployment Rights Act.  [Docket No. 7]  The parties filed a stipulation permitting Plaintiff to amend his First Amended Complaint to correct the statute cited in his breach of fair duty of representation claims, and Plaintiff thereafter filed his Second Amended Complaint on August 1, 2012.  [Docket No. 29]  The parties subsequently filed a second stipulation permitting Plaintiff to amend his Second Amended Complaint to add an additional breach of duty of fair representation claim against Defendant ATU, and Plaintiff thereafter filed his Third Amended Complaint on September 26, 2012.  [Docket No. 52]

Defendant Metropolitan Council answered each of the Complaints, and is not a party to the present motion.

On August 7, 2012, Defendant ATU moved for dismissal, under Rule 12(b)(6), of the three counts alleged against it:  Count VII: Breach of the duty of fair representation under Minn. Stat. § 179A.01 et seq. for failing to execute the grievance procedures under the terms of the CBA for the January 19, 2012 grievance; Count VIII: Breach of the duty of fair representation under Minn. Stat. § 179A.01 et seq. for discriminating against Plaintiff based on his status as a veteran and failing to negotiate for equal employment benefits for the CBA; and

Count IX: Breach of the duty of fair representation under Minn. Stat. § 179A.01 et seq. for the ATU Executive Committee's recommendation that the union membership vote against pursuing arbitration for Plaintiff's June 4, 2012 grievance and for combining the arbitration vote on the several grievances from June 4, 2012 into a single vote.

On November 13, 2012, the parties filed a stipulation to dismiss Count VIII with prejudice.  [Docket No. 57]  Therefore, Defendant ATU's motion to dismiss with respect to Count VIII is moot, and the Court need not address Count VIII in its Order.

### III. DISCUSSION

#### A. Standard

##### 1. Rule 12(b)(6) Sufficiency

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move the Court to dismiss a claim if, on the pleadings, a party has failed to state a claim upon which relief may be granted.  In reviewing a motion to dismiss, the Court takes all facts alleged in the complaint to be true.  Zutz v. Nelson, 601 F.3d 842, 848 (8th Cir. 2010).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is

10

> plausible on its face. Thus, although a complaint need not include detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.

Id. (citations omitted).

In deciding a motion to dismiss, the Court considers "the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint." PureChoice, Inc. v. Macke, Civil No. 07-1290, 2007 WL 2023568, at *5 (D. Minn. July 10, 2007) (citing Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999)).

### 2. Breach of Duty of Fair Representation Under PELRA

Minnesota's Public Employment Labor Relations Act ("PELRA") governs labor relations between public employees and their employers. Minn. Stat. §§ 179A.01, et seq. If a majority of public employees in a bargaining unit decide that they want a union, the union becomes their exclusive bargaining representative. See Minn. Stat. § 179A.12, subd. 2. The union, therefore, has a "judicially created duty to fairly represent its members in collective bargaining and enforcing the agreement." Allen v. Hennepin County, 680 N.W.2d 560, 563 (Minn. Ct. App. 2004) (citing Eisen v. State, Dept. of Pub. Welfare, 352 N.W.2d

731, 735 (Minn. 1984)) review denied (Minn. Aug. 17, 2004).

In order to establish that a union breached its duty of fair representation, the Plaintiff must demonstrate that the union's conduct was "arbitrary, discriminatory, or in bad faith."  Vaca v. Sipes, 386 U.S. 171, 190 (1967); see also Sonenstahl v. L.E.L.S., Inc. 372 N.W.2d 1, 5 (Minn. 1985) (adopting federal law standards for duty of fair representation claims arising under state labor laws).  A union's actions are considered arbitrary if "considering all the circumstances at the time of the union's action or inaction, the union's behavior is so far outside a wide range of reasonableness as to be irrational."  Cross v. UAW, Local 1762, 450 F.3d 844, 847 (8th Cir. 2006) (internal citations omitted).  The union must "serve the interests of all members without hostility or discrimination toward any."  Vaca, 386 U.S. at 177 (internal citations omitted).  A showing of bad faith "requires proof of fraud, deceitful action, or dishonest conduct."  Gaston v. Teamsters Local 600, 614 F.3d 774, 778 (8th Cir. 2010) (internal citations omitted).  In contrast, "[m]ere negligence, poor judgment, or ineptitude by a union is insufficient to establish a breach of the duty of fair representation."  Buford v. Runyon, 160 F.3d 1199, 1202 (8th Cir. 1998).

The statute of limitations for a breach of fair duty of representation claim is

ninety days. Allen, 680 N.W.2d at 565. In a grievance-related duty of fair representation case, the statute of limitations begins to run when the employee objectively "should reasonably have known of the union's alleged breach." Scott v. Un. Auto., 242 F.3d 837, 839 (8th Cir. 2001).

### B. Count VII

In Count VII, Plaintiff alleges that Defendant ATU breached the duty of fair representation by failing to execute the grievance procedures under the terms of the CBA for the grievance filed on January 19, 2012. Defendant ATU moves the Court for an order dismissing Count VII for failure to state a claim under which relief can be granted. Additionally, ATU argues that Count VII should be dismissed because it is time-barred.

The Court has reviewed the Complaint as well as the materials embraced by the Complaint, and finds that Plaintiff has adequately stated a claim in Count VII for breach of the duty of fair representation. The record shows that ATU attempted to schedule a second step grievance meeting, and Plaintiff stated that he was not able to attend the suggested date and that he would follow-up with ATU to schedule the meeting. Even though Plaintiff failed to follow-up with ATU to schedule the meeting, Plaintiff alleges that he failed to do so because he

13

was waiting to receive documentation from Metropolitan Council to use in his defense. In his Third Amended Complaint, Plaintiff states that "[d]espite Plaintiff's requests, neither Defendant followed up on the grievance request until April 24, 2012 when Defendant Metropolitan Council disclosed records of the accident Plaintiff requested at the initial first step grievance on January 19, 2012." (Third Amended Compl. ¶ 37.) Plaintiff's allegations are taken as true, and therefore Plaintiff has sufficiently alleged a claim for breach of the duty of fair representation based on Defendant ATU's failure to execute the grievance procedures under the terms of the CBA for Plaintiff's January 19, 2012 grievance. Because the Court finds that Plaintiff has pled a plausible claim, the Court denies Defendant ATU's motion to dismiss Count VII.

The Court also denies ATU's motion to dismiss Count VII on statute of limitations grounds. The statute of limitations period begins when the Plaintiff "should reasonably have known of the union's alleged breach." Scott, 242 F.3d at 839. With respect to Plaintiff's January 19th grievance, Defendant ATU pursued a course of conduct that disregarded time requirements for the grievance process. Based on ATU's past practices, it was reasonable for Plaintiff to believe that ATU was continuing to pursue his grievance. It was also

reasonable for Plaintiff to first become aware of ATU's alleged breach when Plaintiff was eventually terminated on May 25th. Thus, the statute of limitations period expired on approximately August 23rd and Plaintiff timely filed his Complaint within that period. Therefore, the Court will not dismiss Count VII on statute of limitations grounds.

    C.    **Count IX**

In Count IX, Plaintiff alleges that Defendant ATU breached the duty of fair representation when ATU's Executive Committee recommended that the union membership vote against pursuing arbitration for Plaintiff's June 4, 2012 grievances and for combining multiple grievances into one vote. Defendant ATU moves the Court for an order dismissing Count IX for failure to state a claim under which relief can be granted. Defendant ATU argues that Plaintiff did not have an absolute right to have his grievance arbitrated, and that a union does not breach its duty of fair representation by declining to arbitrate a grievance that it determined lacks merit. <u>Vaca</u>, 386 U.S. at 194-95.

The Court has reviewed the Complaint and the matters embraced by the Complaint, and finds that Plaintiff has failed to state a claim in Count IX for breach of the duty of fair representation. Plaintiff cannot state a plausible claim

for relief that ATU's recommendation to its membership to decline to pursue arbitration was "arbitrary, discriminatory, or in bad faith." Vaca, 286 U.S. at 190. Additionally, Plaintiff cannot state a plausible claim for relief that ATU's decision to combine Plaintiff's multiple grievances into one vote was "arbitrary, discriminatory, or in bad faith." Id.

The allegations underlying Plaintiff's Count IX demonstrate the efforts that Defendant ATU underwent to process Plaintiff's termination grievance. The Complaint alleges that ATU's Executive Committee and legal counsel met with Plaintiff to determine whether the Executive Committee would recommend to its union members to pursue Plaintiff's grievances. (Third Amended Compl. ¶48.) Plaintiff had the opportunity to make a statement and made a statement at the meeting. (Id.) Additionally, the Executive Committee asked Plaintiff questions. (Id.) The Complaint also alleges that Defendant ATU held three separate meetings for its union members to vote on the issue of whether to pursue Plaintiff's grievances. (Id. at ¶47.) Because Plaintiff has failed to state a claim in Count IX of his Complaint, the Court will grant Defendant ATU's motion to dismiss with respect to this claim.

Accordingly, based upon the files, records, and proceedings herein**, IT IS**

**HEREBY ORDERED**:

Defendant's Motion to Dismiss [Docket No. 30] is **GRANTED IN PART** and **DENIED IN PART** as follows:  With respect to Count VII, the motion is denied.  Count IX is dismissed in its entirety.


Dated:   February 11, 2013             s/ Michael J. Davis

                                       Michael J. Davis
                                       Chief Judge
                                       United States District Court