UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| **Donald G. Greer,** | Civ. No. 12-1170 (MJD/JJG) |
| **Plaintiff,** | |
| v. | REPORT AND RECOMMENDATION |
| **The Metropolitan Council, a public corporation and political subdivision, and Amalgamated Transit Union Local 1005,** | |
| **Defendants.** | |

JEANNE J. GRAHAM, United States Magistrate Judge

The above-captioned case is before the Court on Defendants Amalgamated Transit Union Local 1005 and the Metropolitan Council's respective motions for summary judgment (ECF Nos. 98, 105). The motions were referred to the undersigned United States Magistrate Judge by the Honorable Michael J. Davis, Chief Judge, United States District Court for the District of Minnesota, in an Order of Reference dated November 14, 2013 (ECF No. 121). Plaintiff Donald G. Greer ("Greer") opposes summary judgment.

## I.     Background[1]

Greer was an employee of Metro Transit ("Metro Transit"), which is owned and operated by the Metropolitan Council ("the Council"), a public corporation. (Third Am. Compl. ¶¶ 4, 9, Sept. 26, 2012, ECF No. 52.)  Metro Transit provides transportation services throughout the Twin Cities

---

[1] The Court notes that Greer set forth arguments regarding the consideration of some exhibits relating to the veterans' preference proceedings and the EEOC. The Court has not relied on any of the documents in question, and therefore will not discuss Greer's objections to consideration of the documents.

metropolitan area. (*Id.* ¶ 4.) Amalgamated Transit Union Local 1005 (ATU) is a labor organization that is responsible for negotiating a collective bargaining agreement (CBA) on behalf of a bargaining unit of Metro Transit employees. (*Id.* ¶ 27.) Greer was a fair share fee payer of ATU. (*Id.* ¶ 5.)

The CBA governing Greer's employment during the relevant time period went into effect August 1, 2010, and expired on July 31, 2012. (Louris Aff. Ex. B, Oct. 4, 2013, ECF No. 102 at 2.)[2] The CBA sets forth a procedure for processing grievances.[3] Article 5, Section 4 of the CBA states as follows:

> **1st Step**. If the ATU wishes to initiate a grievance, it shall be reduced to writing, setting forth the nature of the grievance, the section(s) of the Agreement allegedly violated, and the relief requested, and filed with the appropriate Metro Transit representative. All grievances shall be filed within seven (7) days after the ATU or its members have knowledge of the facts giving rise to said grievance.
>
> Within seven (7) days after receiving the written grievance, the Metro Transit representative and union representative shall arrange a meeting and attempt to resolve the grievance. First step grievances will be held at the employee's current work location. The Metro Transit representative hearing the grievance shall provide a written response within five (5) days of the meeting. If no mutually satisfactory adjustment can be reached, then the union may appeal the grievance in writing to the General Manager of Metro Transit or his appointee indicating their intent to proceed with the grievance process, within seven (7) days after the written response is given.
>
> **2nd Step.** Within ten (10) days following the receipt of the written grievance appealing the first step response, the ATU will contact the General Manager of

---

[2] This Court will reference the exhibits of the affidavit of Timothy J. Louris extensively in this Report and Recommendation. The exhibits attached to the Louris affidavit include deposition exhibits, which contain page numbers assigned by CM-ECF, page numbers assigned by ATU, and exhibit numbers assigned at the depositions. To avoid confusion, this Court includes pinpoint citations to the CM-ECF-assigned page number each time the Louris affidavit exhibits are cited.

[3] Article 5, Section 4 outlines two grievance procedures. The parties agree that the second grievance procedure, which became effective on June 1, 2011, is the applicable procedure for the current dispute. (*See, e.g.*, Pl.'s Mem. Opp. Summ. J. at 3-4, ECF Nos. 130, 131 (citing, among other provisions, ATU's memorandum for the applicable grievance process)).

>Metro Transit or his appointee to arrange a meeting in an attempt to resolve the grievance. Within ten (10) days of the second step meeting, or within such additional time as may be mutually agreed upon a written answer concerning the grievance will be provided.
>
>If no resolution is reached, the dispute may be submitted to arbitration in accordance with Article 13 hereof, at the written request of either party to the Agreement. The ATU shall first notify Metro Transit in writing of its intention to recommend to its membership, at the next regular meeting or at any special meeting it may wish to call for that purpose, that arbitration be requested, and provided further that it shall advise Metro Transit in writing of the decision by the membership within five (5) business days after the conclusion of such meeting.
>
>Either party may request, within seven (7) days of the second step response to pursue mediation, if mutually agreeable.
>
>Failure to comply with procedures and time limits above outlined shall be deemed an abandonment or settlement of the grievance and shall terminate the matter. Saturdays, Sundays and Holidays shall be excluded in calculating the time limits herein specified.

(*Id.* at 6.)

Greer asserts that his claims relate to employment discipline ranging from October 31, 2011, to December 28, 2011, and the subsequent handling of grievances related to the discipline imposed. (Pl.'s Mem. Opp. Summ. J. at 1.)[4] Accordingly, the Court will focus its examination on events occurring on and after October 31, 2011.

### A.  Disciplinary Events and Grievances

It is undisputed that between October 31, 2011, and December 28, 2011, Greer received discipline from Metro Transit for various driving infractions.

On October 31, 2011, Greer was driving the bus and made a sudden stop, causing numerous passengers to fall and propelling a man in a wheelchair onto the floor. (Tentinger Aff.

---

[4] A citation to Greer's Memorandum Opposing Summary Judgment without an ECF number indicates that the content is found on the cited page in Greer's opposition to ATU's motion, as well as his opposition to the Council's motion.

Ex. D (compact disc), Dec. 20, 2013, ECF No. 132.) Fellow passengers helped the man return to his wheelchair. (*Id.*) A passenger recommended Greer stop to determine if passengers were injured (*Id.*) Greer then consulted with the passenger in the wheelchair, who complained that he had just had a cast removed, and later left for Hennepin County Medical Center, which appears to have been his original destination. (*Id.*) A woman approached Greer and complained that she hurt her hand when Greer stopped, but said she would go to the hospital later. (*Id.*) Greer offered to contact a supervisor, but the woman declined and left the bus. (*Id.*)

On November 21, 2011, Metro Transit disciplined Greer with a Record of Warning for the October 31, 2011, occurrence. (Louris Aff. Ex. B, ECF No. 102-5 at 40.) Greer maintained that the event should have been classified an "incident" rather than an "accident" and sought to correct his work record by filing a "home-made" grievance with Metro Transit on November 29, 2011. (Louris Aff. Ex. B, ECF No. 102-6 at 5-6.) The November 29 grievance does not specifically mention the October 31 accident and instead seeks "[c]ompensatory and punitive damages for loss and suffering caused by the discriminatory acts and conduct of [certain employees]." (*Id.* at 6.)

In December 2011, Greer was disciplined for various other driving violations, as detailed in relevant part herein. On December 20, 2011, a customer complaint was logged[5] in which a customer claimed Greer was "braking suddenly a number of times" and that the customer nearly fell out of her seat. (Louris Aff. Ex. B, ECF No. 102-6 at 16.) Also on December 20, Greer's bus struck a car when Greer was turning left, resulting in scrapes on the car and the bus. (*Id.* at 20.) Greer concedes that this event was properly recorded as an accident. (Pl.'s Mem. Opp. Summ. J.

---

[5] The complaint was "logged," which ATU asserts means that it can be referenced in Greer's overall record, but cannot be used for progressive discipline. (*See, e.g.*, Louris Aff. Ex. B, ECF No. 102-4 at 6-7.)

at 14.) Following the accident, Greer received a Final Record of Warning because he had been involved in three accidents in a rolling twelve-month period (February 2011, October 2011, and December 2011). (Louris Aff. Ex. B, ECF No. 102-6 at 21.) The warning cautioned that an additional warning in the areas of Customer Service, Adherence Code, or Safety would automatically create just cause for termination providing one of the three warnings was a final. (*Id.*)

On December 22, 2011, a customer complained that Greer drove off the scheduled route the night before. (*Id.* at 23.) Greer acknowledges that the bus location data shows Greer driving off the determined route.[6] (Pl's. Mem. Opp. Summ. J. at 14-15.) Metro Transit filed, rather than logged, this complaint. (Louris Aff. Ex. B, ECF No. 102-6 at 23.) On December 28, 2011, a customer complained that Greer was not calling out street names prior to stops. (*Id.* at 25.) Metro Transit filed the complaint. (*Id.*)

As a result of his work record reflecting these driving occurrences, and as fully discussed by the parties, throughout late 2011, Greer attempted to file "home-made" grievances, which Metro Transit forwarded to ATU. It is uncontested that "from late 2011 until the first-step grievance hearings for the [grievances that] were heard on January 19, 2012, ATU repeatedly assisted Greer in following the CBA and pursuing his complaints to initiate the grievance process," but for various reasons, the grievances stalled. (Pl.'s Mem. Opp. Summ. J. at 37, ECF No. 130.)

On January 5, 2012, Greer wrote to ATU and said he wanted to proceed with a grievance meeting. (Louris Aff. Ex. B, ECF No. 102-6 at 30.) The next day, ATU contacted Metro Transit

---

[6] Greer also indicates that an additional customer complaint was logged for Greer's driving on December 21, 2011, for braking too hard. (*See* Pl.'s Mem. Opp. Summ. J. at 15, ECF No. 130.)

to schedule the grievance proceeding. (*Id.*) Greer expressed concern about his due process rights, and on January 8, 2012, wrote an email message to ATU regarding ATU's duties as his exclusive representative and contending that "ATU as my exclusive representative will assume all liability for any damages of my property rights, liberty rights, or any other rights or benefits that I am entitled to." (*Id.* at 32-33.) Following receipt of his email, ATU contacted its attorney and on January 9, 2012, ATU's counsel wrote Greer regarding Greer's perception of ATU's obligations and outlining in what situations ATU is Greer's exclusive representative and in what situations it is not. (*Id.* at 35-36.) An hour after receiving the letter from ATU's counsel, Greer wrote Metro Transit and ATU, explaining that he would agree to complete the first-step meeting for the grievance filed on November 29, 2011, although he would only do so on certain conditions, and asserted the conditions must be agreed to in writing and signed by all parties. (*Id.* at 37.) It appears that ATU and Metro Transit never completed such a writing.

  B.  **First-Step Meeting**

Defendants permitted Greer to file his grievances, including that relating to the October 31 event, through ATU. (*Id.* at 39-45.) ATU scheduled the first-step meeting for all seven of Greer's pending grievances for January 19, 2012, and arranged to meet with Greer before the first-step meeting in order to "go over everything with [Greer]." (*Id.* at 38.) ATU told Greer that it had all the paperwork it needed to file the grievances and that it had assembled all the evidence and investigatory materials necessary. (Louris Aff. Ex. C, ECF No. 103 at 6-7.) The first-step meeting occurred, and on January 26, 2012, Metro Transit provided a written response on each of the seven grievances, denying them. (Louris Aff. Ex. B, ECF Nos. 102-6 at 47-50, 102-7 at 1-8.)

### C. Second-Step Meeting and Termination

On January 29, 2012, an ATU representative informed Metro Transit that Greer wanted to proceed to the second step on all seven grievances, and informed Greer and Metro Transit that the representative was presently on vacation and would schedule the second-step meeting when he returned. (Louris Aff. Ex. B, ECF No. 102-7 at 9.) On February 20, 2012, ATU contacted Greer regarding his availability to attend the second-step meeting on February 23. The next day, Greer responded via an email to ATU, stating:

> I am presently out of town so I could not make a meeting on Thursday 2-23-12. I have not received any documentation that I requested from the company, thru Lisa Benson. With out [sic] the documentation I can not [sic] make a meaningful statement as is my right under the law. Frank Stumpf's answer to the step one grievance hearing showed that my request for compliance with company policy and my rights under the law were completely ignored. The fact that Frank Stumpf has intentionally disregarded the American with Disabilities Act shows that the grievance process is a sham. This is a direct denial of due process as defined under Loudermill and Goldberg cases.
>
> Once I find out what my work schedule will be on Tuesday thru Thursday I will let you know. I do not want to loose [sic] the overtime pay when I can't even get the documentation that I am entitled to by law, in order to defend myself.

(*Id.* at 13.)

The second-step meeting never occurred, and the October 31 event remained designated as an accident in Greer's employee file. (Louris Aff. Ex. C, ECF No. 103 at 9.) On April 11, 2012, Greer received another customer complaint, this time for turning into the wrong lane. (Louris Aff. Ex. B., ECF No. 102-7 at 17.) Metro Transit conducted an investigative hearing and later a *Loudermill* hearing, at which ATU represented Greer. (*Id.* at 23-24, 27-30.) On May 25, 2012, Metro Transit terminated Greer's employment based on the Council's operating policy and Greer's overall record. (*Id.* at 31.)

### D. Employee File Requests

7

Greer has admitted that he did not contact ATU between February 23 and April 26 to schedule a second-step meeting, but asserts that he failed to do so because he was waiting for documentation to defend himself. (Louris Aff. Ex. A, ECF No. 101-1 at 35.)

The documents Greer references relate to requests he made on February 1 and February 4, 2012. Greer requested all documentation that Metro Transit and the Council had acquired during the application period for Greer's employment and during Greer's employment. (Louris Aff. Ex. B, ECF No. 102-7 at 11-12.) On February 29, 2012, the Council wrote to Greer and informed him that the documents were available for review, free of charge, and apprising him of the cost of production if Greer wanted paper copies. (*Id.* at 14.) On April 10, 2012, Greer submitted a check in order to receive paper copies of the documents. (*Id.* at 14-16.) On April 26, 2012, he emailed ATU, asserting that he had retrieved the documents, stating the documentation was incomplete, and agreeing to an investigative hearing limited to the documentation provided. (*Id.* at 22.) After Greer had retrieved the documents he requested, ATU discussed the second-step meetings with Metro Transit, but Metro Transit would not continue processing the grievances, deeming them untimely. (Louris Aff. Ex. C., ECF No. 103 at 8; *see also* Pl.'s Mem. Opp. Summ. J. at 31, ECF No. 130; Pl.'s Mem. Opp. Summ. J. at 28, ECF No. 131.)

E.   **Present Action**

Greer brought the present action in 2012. The Third Amended Complaint alleges nine claims. Count VIII was dismissed with prejudice by Order of November 14, 2012 (ECF No. 59). Following a motion to dismiss, Count IX was dismissed in its entirety by Order of February 11, 2013 (ECF No. 69). On December 20, 2013, the parties agreed to dismissal with prejudice of Counts I through V (Joint Stipulation Partial Dismiss., ECF No. 133), although the stipulation remains pending. Accordingly, there are two counts remaining: Count VI, which alleges the

Council materially breached the terms of the CBA by failing to execute the CBA's terms, and Count VII, which alleges that ATU breached its duty of fair representation to Greer by failing to execute the CBA's grievance procedures. (Third Am. Compl. ¶¶ 59, 61.)  The Council moves for summary judgment on Count VI and ATU moves for summary judgment on Count VII.

**II.     Discussion**

Summary judgment is appropriate if, viewing all facts in the light most favorable to the non-moving party, there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The party seeking summary judgment bears the burden of showing that there is no disputed issue of material fact. *Celotex*, 477 U.S. at 323. "A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case." *Amini v. City of Minneapolis*, 643 F.3d 1068, 1074 (8th Cir. 2011) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 252 (1986)). To defeat summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial." *Wood v. SatCom Mktg., LLC*, 705 F.3d 823, 828 (8th Cir. 2013).

The Labor Management Relations Act authorizes "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations." 29 U.S.C. § 185(a); *Miner v. Local 373*, 513 F.3d 854, 860 (8th Cir. 2008). Courts recognize a "hybrid claim" under the statute whereby an employee pursues a claim against the employer for breach of the CBA and against the union for breach of the duty of fair representation. *Scott v. United*

*Auto.*, 242 F.3d 837, 838 (8th Cir. 2001). Under a hybrid action, an employee "must show that the employer breached the terms of a CBA *and* that the union breached its duty of fair representation under that CBA." *Miner*, 513 F.3d at 860 (emphasis added); *see also Muhonen v. Cingular Wireless Employee Servs., LLC*, 802 F. Supp. 2d 1025, 1031-32 (D. Minn. 2011), *aff'd*, 456 F. App'x 610 (8th Cir. 2012). Accordingly, the Court will first examine whether ATU breached its duty of fair representation.

### A. Breach of Duty of Fair Representation

Greer alleges ATU breached its duty of fair representation pursuant to Minnesota's Public Employment Labor Relations Act (PELRA) by failing to execute the grievance procedures for "the grievance" filed January 19, 2012.[7] (Third Am. Compl. ¶ 59.)

PELRA governs labor relations between public employees and their employers. Minn. Stat. §§ 179A.01, *et seq*. If a majority of public employees in a bargaining unit decide that they want a union, the union becomes their exclusive bargaining representative. *See* Minn. Stat. § 179A.12, subd. 2. The union, therefore, has a "judicially created duty to fairly represent its members in collective bargaining and enforcing the agreement." *Allen v. Hennepin Cnty.*, 680 N.W.2d 560, 563 (Minn. Ct. App. 2004) (citing *Eisen v. Dep't. of Pub. Welfare*, 352 N.W.2d 731, 735 (Minn. 1984)).

Unions enjoy considerable deference in executing their duty of fair representation. *Gaston v. Teamsters Local 600*, 614 F.3d 774, 778 (8th Cir. 2010) (citing *Air Line Pilots Ass'n Int'l v. O'Neill*, 499 U.S. 65, 78 (1991)). To establish that a union breached its duty of fair

---

[7] The Court notes that Count VII references "the grievance," which appears to reference the grievance for the October 31, 2011, event. The parties discuss all of the January 19, 2012, grievances, and thus the Court will too, particularly because some those grievances were discussed in the Third Amended Complaint, although they were not the focus of Count VII.

*Auto.*, 242 F.3d 837, 838 (8th Cir. 2001). Under a hybrid action, an employee "must show that the employer breached the terms of a CBA *and* that the union breached its duty of fair representation under that CBA." *Miner*, 513 F.3d at 860 (emphasis added); *see also Muhonen v. Cingular Wireless Employee Servs., LLC*, 802 F. Supp. 2d 1025, 1031-32 (D. Minn. 2011), *aff'd*, 456 F. App'x 610 (8th Cir. 2012). Accordingly, the Court will first examine whether ATU breached its duty of fair representation.

### A. Breach of Duty of Fair Representation

Greer alleges ATU breached its duty of fair representation pursuant to Minnesota's Public Employment Labor Relations Act (PELRA) by failing to execute the grievance procedures for "the grievance" filed January 19, 2012.[7] (Third Am. Compl. ¶ 59.)

PELRA governs labor relations between public employees and their employers. Minn. Stat. §§ 179A.01, *et seq*. If a majority of public employees in a bargaining unit decide that they want a union, the union becomes their exclusive bargaining representative. *See* Minn. Stat. § 179A.12, subd. 2. The union, therefore, has a "judicially created duty to fairly represent its members in collective bargaining and enforcing the agreement." *Allen v. Hennepin Cnty.*, 680 N.W.2d 560, 563 (Minn. Ct. App. 2004) (citing *Eisen v. Dep't. of Pub. Welfare*, 352 N.W.2d 731, 735 (Minn. 1984)).

Unions enjoy considerable deference in executing their duty of fair representation. *Gaston v. Teamsters Local 600*, 614 F.3d 774, 778 (8th Cir. 2010) (citing *Air Line Pilots Ass'n Int'l v. O'Neill*, 499 U.S. 65, 78 (1991)). To establish that a union breached its duty of fair

---

[7] The Court notes that Count VII references "the grievance," which appears to reference the grievance for the October 31, 2011, event. The parties discuss all of the January 19, 2012, grievances, and thus the Court will too, particularly because some those grievances were discussed in the Third Amended Complaint, although they were not the focus of Count VII.

representation, a plaintiff must demonstrate that the union's conduct was "arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes*, 386 U.S. 171, 190 (1967). A union's actions are considered arbitrary if "considering all the circumstances at the time of the union's action or inaction, the union's behavior is so far outside a wide range of reasonableness as to be irrational." *Cross v. United Auto Workers, Local 1762*, 450 F.3d 844, 847 (8th Cir. 2006) (citations and internal quotation marks omitted). The union must "serve the interests of all members without hostility or discrimination toward any." *Vaca*, 386 U.S. at 177. A showing of bad faith requires proof of fraud, deceitful action, or dishonest conduct. *Gaston*, 614 F.3d at 778. In contrast, "[m]ere negligence, poor judgment, or ineptitude by a union is insufficient to establish a breach of the duty of fair representation." *Buford v. Runyon*, 160 F.3d 1199, 1202 (8th Cir. 1998).

The Court has thoroughly examined the events that occurred and ATU's role in those events. The record establishes that, following the January 2012 first-step meeting and as required by the CBA, Metro Transit submitted written responses to Greer's various grievances. ATU then notified Metro Transit of its intent to hold a second-step grievance meeting. When attempting to schedule a date with Greer, Greer said he would let ATU know about scheduling the second-step meeting. Greer did not follow up until late April, at which point ATU attempted to schedule Greer's second-step meeting, but Metro Transit refused due to the time lapse. As a result, the second-step meeting never occurred.

On this record, the Court finds no genuine dispute as to any material fact and concludes that ATU is entitled to judgment as a matter of law. The Court acknowledges that Greer was unsatisfied with ATU's representation. But even viewing the facts in a light most favorable to Greer, the Court is unconvinced that ATU's actions were arbitrary or discriminatory. Greer

highlights that ATU could have followed up more diligently, but fails to discuss the full context and many occasions when he failed to comply or cooperate with procedures. In light of Greer's sometimes mercurial interest in having ATU pursue his grievances, it was not irrational for ATU to wait to hear from him to schedule the second-step meeting. *See Muhonen*, 802 F. Supp. 2d at 1048 (noting that plaintiff may not successfully assert breach of duty of fair representation against the union after plaintiff failed to pursue a grievance). At most, ATU's failure to follow up with Greer would be deemed negligence or ineptitude, which the law makes clear do not equate a breach of the duty of fair representation. *See Gaston*, 614 F.3d at 778.

Greer's assertion that ATU acted in bad faith is further lacking in merit. Even with the generous standard afforded to non-movants in a summary judgment analysis, the record is bare of a showing of "fraud, deceitful action, or dishonest conduct," *see id.*, and Greer's conclusory assertions to the contrary fail to establish such behavior. In sum, finding no genuine issue of material fact regarding the duty of fair representation, the Court recommends granting summary judgment in favor of ATU as to Count VII.

> B. **Breach of the CBA**

Having determined that ATU did not breach its duty of fair representation, Greer's hybrid claim against the Council fails as well. As such, the Court need not consider whether Metro Transit violated the CBA. *See Jones v. United Parcel Serv., Inc.*, 461 F.3d 982, 994 (8th Cir. 2006) (determining that a party seeking to recover on hybrid claim must prove both that employer violated CBA and that union breached duty of fair representation, and declining to consider whether employer violated the CBA where plaintiff did not generate genuine issues of fact that union breached duty of fair representation). Even if this Court considers the merits of

Greer's breach of contract claim, however, summary judgment in favor of the Council is still appropriate.

Greer makes a plethora of arguments to support his claim that the Council materially breached the terms of the CBA by failing to execute its terms. First, Greer continues to dispute the October 31 event's classification as an accident, rather than an incident. The Court has reviewed the various bus cameras' recordings of the October 31, 2011, event. As agreed by the parties, Greer's sudden stop caused numerous passengers to fall and caused one man to fall from his wheelchair onto the floor. Greer's contention that Metro Transit inappropriately termed the event an accident because management applies the term differently is baseless. The Court reviewed the various materials, including those highlighted by Greer, and finds no basis to the claim that Metro Transit employs contradictory or ambiguous meanings for the term "responsible accident," so as to consider the CBA breached by the designation of the October 31 event.

Greer also claims that Metro Transit deprived him of his due process under Rule 137 of the Metro Transit Bus Operator's Rule Book and Guide. (*See* Louris Aff. Ex. B, ECF No. 102-2 at 24.) Rule 137 discusses the Metro Transit employee discipline policy and describes a three-step progressive discipline process. (*Id.*) Greer's arguments in this regard fail. A review of the record reveals that Metro Transit was careful to apprise Greer of discipline and permitted him the opportunity to grieve that discipline. The Court notes that Metro Transit permitted ATU to file the grievance regarding the October 31, 2011, accident well after the grievance deadline, despite Greer's initial refusal to follow procedure. Moreover, Metro Transit kept ATU informed of Greer's actions so that ATU could represent Greer in the various proceedings. Greer concedes that "Rule 137 may not require a full-blown evidentiary hearing for each meeting between Greer and management relating to discipline, but it surely entails more than what was provided." (Pl.'s

Mem. Opp. Summ. J. 37, ECF No. 131.) The Court has examined the record and finds no genuine dispute as to any material fact regarding Greer's due process arguments.

Finally, Greer argues Metro Transit breached the CBA by denying his second-step request as untimely. Greer's request was not within the timeline prescribed for the grievance procedure, but Greer is correct that Metro Transit frequently bent its rules for Greer. Even so, on January 26, 2012, Metro Transit issued written memoranda memorializing the January 19, 2012, first-step meeting. Soon thereafter, Greer requested documentation, only to wait until April to retrieve the documentation and pursue the second-step meeting. He did not retrieve the documents until April 26, a day after he had been informed that he was in "termination status." (Louris Aff. Ex. B, ECF No. 102-7 at 20-22.) Although Greer is correct that Metro Transit had permitted some flexibility for Greer with the grievance deadlines, Greer waited months to continue to pursue his second-step meeting. The Court declines to preclude summary judgment on this basis.

Following a careful review of the record, the Court is unpersuaded that Metro Transit deviated from the CBA so as to render the agreement breached. Instead, the record establishes that both ATU and Metro Transit consistently worked to assist Greer with his numerous requests and grievances, and that his claims are meritless. In reaching this conclusion, the Court is sympathetic that Greer may have had concerns and mixed feelings regarding the grievance procedure and that the processes set forth were likely confusing and frustrating for Greer. However, awareness of those considerations does not dictate the legal standard for the Court to apply. The Court has considered the record and has found no reason to withhold summary judgment in favor of Defendants. Although recommending the grant of summary judgment, the

Court does not recommend the grant of attorney's fees, finding such an award unnecessary at this time.

### III. Recommendation

Based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Pursuant to the parties' stipulation of December 20, 2013 (ECF No. 133), Counts I-V be **DISMISSED WITH PREJUDICE**;

2. Defendant Amalgamated Transit Union Local 1005's Motion for Summary Judgment (ECF No. 98) be **GRANTED**;

3. Defendant The Metropolitan Council's Motion for Summary Judgment (ECF No. 105) be **GRANTED**;

4. Defendants' requests for attorney's fees be **DENIED**;

5. Counts VI and VII be **DISMISSED WITH PREJUDICE**; and

6. **JUDGMENT BE ENTERED ACCORDINGLY**.

Dated: April 24, 2014      s/ *Jeanne J. Graham*
JEANNE J. GRAHAM
United States Magistrate Judge

### NOTICE

Pursuant to District of Minnesota Local Rule 72.2(b), any party may object to this Report and Recommendation by filing and serving specific, written objections by **May 12, 2014**. A party may respond to the objections within fourteen days after service thereof. Any objections or responses shall not exceed 3,500 words. The district judge will make a de novo determination of those portions of the Report and Recommendation to which objection is made. The party making the objections must timely order and file the transcript of the hearing unless the parties stipulate that the district judge is not required to review a transcript or the district judge directs otherwise.